IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

-------------------
No. 92-7131
-------------------


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANDEN MAX DULA and ACCRABOND CORPORATION,

Defendants-Appellants.


- - - - - - - - - -
Appeal from the United States District Court
for the Northern District of Mississippi
- - - - - - - - - -
April 16, 1993

Before KING and EMILIO M. GARZA, Circuit Judges, and HALL[*], District Judge.

SAM B. HALL, JR., District Judge:

Landen Max Dula and Accrabond Corporation were convicted by a jury of wire fraud, mail fraud, and false statements. Defendants now appeal their convictions, alleging a <u>Brady</u> violation, a comment on the failure of Dula to testify, and a violation of Fed. R. Evid. 404(b). Defendants also allege that the evidence was insufficient to prove Dula's intent to defraud, and that the trial court erred in denying a motion for new trial because the verdict was against the weight of the evidence. As

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

the Brady claim is not presented in the record, it is dismissed without prejudice to the defendants' right to raise it in an action under 28 U.S.C. § 2255. As to all other issues, we find no error, and affirm.

## I. FACTS AND PROCEDURAL HISTORY

Landen Max Dula is the founder and president of Accrabond Corporation, which is engaged in the sale of industrial sealants, adhesives, coatings, and other chemical products for military, government, and commercial aerospace use. Accrabond manufactured its own line of products, and distributed products of other manufacturers.

On May 16, 1991, Dula and Accrabond were indicted in the Northern District of Mississippi on charges of wire fraud, mail fraud, and false statements. The 32 count indictment charged that between January 1988 and September 1989, the defendants devised a scheme to defraud and obtain money under false pretenses by representing that products sold and supplied conformed to the purchaser's specifications when they did not. Defendants were also charged with fraudulently substituting falsely identified and nonconforming products,[2] relabeling stale, outdated, and expired products as fresh, recently acquired products with extended shelf

---

[2] Many aerospace products carry manufacturer's lot numbers to provide a mechanism for a manufacturer to trace and recall defective lots. Accrabond provided its own lot numbers, or purchased small quantities of a product in order to obtain an authentic lot number.

life,[3] coloring, thinning, and altering the appearance of products to conform to the appearance of other products and substituting the for other products,[4] and using false labels, shipping documents, and certificates of compliance to conceal the fraudulent substitution of products.[5]

The indictment alleged eighteen instances of the use of interstate wire communications in violation of 18 U.S.C. §§ 2, 1343, and one of the mail in violation of 18 U.S.C. §§ 2, 1341 in execution of a scheme to defraud thirteen aerospace and defense supply companies.[6] The indictment further charged the defendants with thirteen counts of falsely certifying products for use in defense contracts in violation of 18 U.S.C. §§ 2, 1001.

---

[3] Most aerospace products such as those sold by Accrabond carry a shelf life, beyond which they must be retested to determine whether they still meet the standards of performance prescribed by military specifications.

[4] Any alteration of a product after manufacture, such as thinning, dying, etc. may also change performance, and therefore also requires retesting to determine if the product still meets the military specifications.

[5] Most of Accrabond's business was conducted by telephone or fax transmissions, which were then entered into a computer, which generated a sales order and a manufacturing order. The order form also had a space for entering "blind notes," which were used to instruct Accrabond employees on what substitute to send for the product ordered, or what substitute had been supplied to the customer on a previous order. The documents sent to the customer, however, all described the product ordered, and did not reveal that a substitute had been supplied.

[6] The defendants were charged with illegally using wire communications when accepting telephone purchase orders from various customers. Further, the defendants allegedly submitted false statements or entries by supplying fraudulent certificates of compliance indicating that a particular product conformed to a particular military specification.

After a ten day jury trial in December, 1991, Accrabond was convicted on all but one count of wire fraud, and Dula was convicted on six counts of wire fraud and five counts of false statements.  On February 18, 1992, Accrabond was sentenced to pay a fine of $248,000, and restitution in the amount of $8,238.32.  Dula was sentenced to a term of imprisonment of thirty-six months on each count, to be served concurrently, as well as a fine of $27,500.  The defendants filed a notice of appeal February 24, 1992, from the judgments entered by U.S. District Judge Neal B. Biggers, Jr., and the court stayed execution of the judgment pending appeal.

## II.  ANALYSISA.    BRADY VIOLATION

Defendants contend that the government violated the disclosure requirements of Brady v. Maryland, 373 U.S. 83 (1963), by failing to reveal test results showing that the product sold by Accrabond performed as well as was required.[7]  Defendants claim that the government was in possession of numerous reports of such tests, which it failed to disclose despite repeated requests prior to trial.  Specifically, Defendants pointed to inspection and testing done by Martin-Marietta, as stated by a company spokesman the day after the convictions.  See Northeast Mississippi Daily Journal,

---

[7]  In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that the due process clause requires the government to disclose all information that is favorable to the accused and is material to either guilt or punishment.  See generally 3 Wright, Federal Practice and Procedure: Criminal 2d, § 557.2 (1982).  The rule covers impeachment as well as exculpatory evidence.  See Giglio v. United States, 405 U.S. 150, 154 (1972).

4

Sunday, December 15, 1991. Defendants allege that this violation prejudiced them by denying them exculpatory materials in trial preparation and presentation, and by permitting the prosecutor to make false statements in closing argument regarding the impossibility of inspecting the products supplied by Accrabond.[8]

The government argues that it has not violated the requirements of Brady since the information was equally available to the Defendants,[9] and the information is not material.[10] We

---

[8] In closing argument, counsel for the Defendants argued that while the government had alleged that faulty products sold by Accrabond had endangered the performance of weapons such as the cruise missile, the demonstration of the effectiveness of our country's military technology in the Persian Gulf War, including missiles made with materials sold by Accrabond, showed that the products were not deficient. (Tr. 1755). In response, the prosecutor stated in rebuttal that only an inspection of the materials could have revealed what problems there might have been with Accrabond products, and asserted that such an inspection would have been impossible. (Tr. 1775-1776).

[9] Brady does not oblige the Government to provide defendants with evidence that they could obtain from other sources by exercising reasonable diligence. When evidence is available equally to the defense and the prosecution, the defendants must bear the responsibility for their failure to diligently seek its discovery." See, e.g., United States v. McKenzie, 768 F.2d 602, 608 (5th Cir. 1985), cert. denied, 474 U.S. 1086 (1986)

[10] A defendant must establish that withheld evidence favorable to the accused is "material" in order to succeed on a Brady claim. See United States v. Ellender, 947 F.2d 748, 756 (5th Cir. 1991). Suppressed evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985)."
In this case, the government argues that whether or not some of Accrabond's products were not fraudulent or nonconforming was not at issue, and is in fact irrelevant. Rather, the issue was whether the products were falsely represented and certified. See, e.g., United States v. Grimm, 568 F.2d 1136, 1138 (5th Cir.

decline to address these arguments at this time because, as indicated by oral argument, there is no evidence in the record concerning the test results that the government is alleged to have withheld in violation of <u>Brady</u>.  In the absence of a record, we cannot fairly evaluate the merits of the defendants' claim.  We therefore dismiss the defendants' <u>Brady</u> claim without prejudice to their right to raise the issue in a proceeding under 28 U.S.C. § 2255.[11]  <u>See</u> 3 Wright, <u>Federal Practice and Procedure: Criminal 2d</u> § 594 p. 453.

B.    COMMENT ON DULA'S FAILURE TO TESTIFY

Dula also contends that the trial court erred when it denied a motion for mistrial following a statement by the prosecutor in closing argument that it claims called the jury's attention to the fact that the Dula had elected not to testify.  Dula argues that the failure of the trial court to declare a mistrial, or at least give a curative instruction, denied him his Fifth Amendment rights.

The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. <u>Griffin v. California</u>, 380 U.S. 609 (1965); <u>United States v.</u>

---

1978) (evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant); <u>United States v. Marrero</u>, 904 F.2d 251, 260-261 (5th Cir. 1990), <u>reh. denied</u>, 909 F.2d 1479, <u>cert. denied</u>, 498 U.S. 1000.

[11]  This is similar to our procedure for ineffective assistance of counsel claims.  Where such claims are not raised before the trial court, they cannot be resolved on direct appeal since the district court has had no opportunity to develop the record as to the merits of the allegations.  <u>See, e.g.</u>, <u>United States v. Higdon</u>, 832 F.2d 312, 313-314 (5th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1075 (1988); <u>United States v. Bounds</u>, 943 F.2d 541 (5th Cir. 1991).

6

<u>Borchardt</u>, 809 F.2d 1115 (5th Cir. 1987). In deciding whether a comment made by the government in its closing argument is a comment on the defendant's failure to testify, a court must determine if "the prosecutor's manifest intention was to comment on the accused's failure to testify [or] was... of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>United States v. Smith</u>, 890 F.2d 711, 717 (5th Cir. 1989).

However, the comments complained of must be viewed within the context of the trial in which they are made. <u>United States v. Bright</u>, 630 F.2d 804, 826 (5th Cir. 1980). In this case, one of the defenses set forth by Dula and Accrabond was that the prosecution was instigated and directed by a rival, Products Research Chemical Corporation (PRC), to carry out the "corporate murder" of Accrabond in order to take over its market. Against this background, Government counsel stated in closing argument:

> Well, let me talk about PRC just a minute. There's been nobody on this witness stand that really knows about what happened between PRC and Accrabond Corporation.

(Tr. 1784). The government argues that the context makes clear that the intent of the argument was not to comment on Dula's failure to testify, but to make the point that none of the witnesses who <u>had</u> testified about the existence of a lawsuit by PRC against Accrabond actually knew anything about it.

It is not error to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely. <u>See, e.g.</u>, <u>United States v. Bright</u>, 630 F.2d 804, 825 (5th

7

Cir. 1980). Thus, the government's argument to the jury that "no one has given you any reasonable explanation" in response to the defendant's contentions is not error. See United States v. Warren, 550 F.2d 219, 227 (5th Cir. 1977), cert. denied, 434 U.S. 1016 (1978).

In any case, the district court's instructions to the jury emphasized that the defendant need not testify, and that no inference could be drawn from his failure to testify. (Tr. 1082). Therefore, even if there was harm created by counsel's comments, it was offset by the court's instructions. See, e.g., United States v. Smith, 890 F.2d 711, 716 (5th Cir. 1989)

C.   VIOLATION OF FED. R. EVID. 404(B)

Defendants next contend that the trial court violated Fed. R. Evid. 404(b)[12] by permitting the introduction of testimony concerning an alleged prior bad act of Dula and Accrabond which was not charged in the indictment. During the trial, the government elicited testimony regarding a sale of materials by Accrabond to Pan Metals, a Korean corporation. Rick Drexler, a former laboratory manager at Accrabond, told the jury that Pan Metals had

---

[12]   Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

8

ordered a Dow Corning adhesive, but had been sent a substitute product, which "did not get by" Pan Metals. (Tr. 969-971). This transaction was not among those alleged in the indictment.

This court has set forth a two-part test for determining the propriety of admitting evidence of "bad acts" not alleged in the indictment. United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), reh. granted, 563 F.2d 1782, opinion superseded, 582 F.2d 898, cert. denied, 440 U.S. 920 (1979). First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.[13] Id.

Evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an "extrinsic" offense within the meaning of Rule 404(b), and is therefore not barred by the rule. See, e.g., United States v. Simpson, 709 F.2d 903, 907 (5th Cir. 1983), cert. denied, 464 U.S. 942. The defendants were charged with conducting a continuing scheme to defraud, characterized by the substitution of products, and it was necessary for the government to prove that the defendants had intentionally devised a scheme and artifice to

---

[13]  Federal Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

9

defraud.  In developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant. See, e.g., United States v. Mancuso, 444 F.2d 691, 695 (5th Cir. 1971) (other transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant).

In this case, the existence of a scheme to defraud is an element of the offense of wire fraud under 18 U.S.C. § 1343. Although Pan Metals' order was not one of those charged in the indictment, it was relevant to the existence of a scheme and therefore was independently admissible as direct proof of the scheme charged. United States v. Santagata, 924 F.2d 391, 393-394 (1st Cir. 1991).  In addition, the admission of the testimony did not violate Rule 403, which allows a trial judge to exclude probative evidence that is substantially outweighed by its prejudicial effect.  The balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge, a decision that is final in the absence of abuse of discretion.  United States v. Maceo, 947 F.2d 1191 (5th Cir. 1991) (citations omitted).  We find no such abuse here.

D.   SUFFICIENCY OF THE EVIDENCE OF DULA'S INTENT TO DEFRAUD

Dula also argues that a review of the trial demonstrates that the government failed to establish its wire fraud allegations because it  introduced no evidence that the use of the wires was preceded by an intent to defraud.

To obtain Dula's convictions for the crimes of wire fraud

alleged in the indictment, the government was required to prove beyond a reasonable doubt that he aided and abetted the use of the wires in furtherance of a scheme to defraud. <u>United States v. Shively</u>, 927 F.2d 804 (5th Cir. 1991), <u>cert. denied sub nom</u> <u>Johnson v. United States</u>, 111 S.Ct. 2806 (to obtain mail fraud conviction, government must prove scheme or artifice to defraud, specific intent to defraud, and use of mails for purpose of executing scheme); <u>United States v. Shaw</u>, 555 F.2d 1295 (5th Cir. 1977) (same elements as to wire fraud). Dula argues that the proof adduced by the Government at trial that the orders were taken by phone, and following these orders a decision may have been made to substitute an alternative product, is inadequate.

The above proof is sufficient, even standing alone, because the sequence and timing of the phone calls is immaterial. Once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme. <u>See</u> <u>United States v. Westbo</u>, 746 F.2d 1022, 1025 (5th Cir. 1984). The crime of wire fraud did not terminate with the telephone call, and acts occurring <u>after</u> the use of the wires can be evidence "from which a jury could infer participation of the scheme to defraud." <u>Id.</u>; <u>see also</u> <u>United States v. McDonald</u>, 837 F.2d 1287, 1293 (5th Cir. 1988) (intent can be proven by the scheme to defraud, and may be inferred from other facts).

E. VERDICT AGAINST THE WEIGHT OF THE EVIDENCE

Finally, appellants contend that the trial court abused its

11

discretion by denying a motion for new trial which asserted that the weight of the evidence supported the defendants' acquittal.

The decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court. An appellate court may reverse only if it finds the decision to be a "clear abuse of discretion." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). Where the defense has had an opportunity to question witnesses as to their biases, and the jury has concluded that the witnesses are credible, the trial court has broad discretion. "It is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses." United States v. Ivey, 949 F.2d 759, 767 (5th Cir. 1991), cert. denied sub nom Wallace v. United States, 113 S.Ct. 64 (1992). "This court's review does not encompass weighing the evidence or judging the credibility of witnesses.... [This court] must affirm the conviction if a rational jury could have found the essential elements of the crimes beyond a reasonable doubt." United States v. Thorn, 917 F.2d 170, 173 (5th Cir. 1990).

Defendants argue that the Government's witnesses were not credible witnesses because they were disgruntled former employees of the defendants. However, as stated above, that credibility determination is best left for the jury. The district court did not abuse its discretion in accepting the jury's assessment of the credibility of the witnesses and denying a motion for new trial on the ground that the verdict was against the weight of the evidence.

12

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court, but DISMISS the defendants' <u>Brady</u> claims, without prejudice to their right to raise them in an action under 28 U.S.C. § 2255.