United States Court of Appeals,

Fifth Circuit.

No. 93-7504.

UNITED STATES of America, Plaintiff-Appellee,

v.

Landen Max DULA and Accrabond Corporation, Defendants-Appellants.

Dec. 8, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before POLITZ, Chief Judge, WISDOM and SMITH, Circuit Judges.

POLITZ, Chief Judge:

Landen Max Dula appeals the district court's denial of habeas relief, 28 U.S.C. § 2255, from his convictions and sentences for wire fraud, mail fraud, and false statements. Finding no error, we affirm.

*Background*

Accrabond Corporation, a manufacturer and vendor of industrial sealants, adhesives, coatings, and other chemical products for both private and government aerospace use, and Dula, its president, were indicted on 18 counts of wire fraud,[1] one of mail fraud,[2] and 13 counts of falsely certifying products for use in defense contracts.[3] The charges arose from Accrabond's practice of filling orders by substituting either cheaper products for the ones ordered

---

[1]18 U.S.C. §§ 2, 1343.

[2]18 U.S.C. §§ 2, 1341.

[3]18 U.S.C. §§ 2, 1001.

1

or stale or outdated products which were altered to appear fresh, and then using false labeling or certificates of compliance with military specifications to conceal the fraudulent substitutions.

A jury convicted Dula of six counts of wire fraud and five counts of false statements, and he was sentenced to concurrent terms of 36 months imprisonment on each count and a fine of $27,500. His convictions and sentences were affirmed on direct appeal.[4]

Dula then filed the instant section 2255 motion, alleging that the government had withheld *Brady*[5] material by failing to reveal certain reports, generated in response to an FAA inquiry, to the effect that the Accrabond products performed adequately. The district court denied the motion, finding that the prosecution neither knew of nor possessed the documents in question, and that, regardless, the documents were neither exculpatory nor material. The instant appeal followed.

*Analysis*

Dula contends that the government was in possession of responses to FAA inquiries to Accrabond customers which revealed that, after testing or routine use, the products sold by Accrabond were of acceptable quality, and that despite a defense request the

---

[4]*United States v. Dula,* 989 F.2d 772 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 172, 126 L.Ed.2d 131 (1993). Dula made the *Brady* claim in his direct appeal but, as the record was incomplete on this issue, it was dismissed without prejudice to his right to raise it via section 2255 motion.

[5]*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

government failed to produce these responses in violation of *Brady.*

To prevail on his *Brady* claim Dula must show that favorable and material evidence was suppressed.[6] We need address only the issue of materiality for today's disposition.

In order for evidence to be material there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[7] A reasonable probability has been defined to be a "probability sufficient to undermine confidence in the outcome."[8] This case presents no such probability.

Of the companies responding to the FAA inquiry, only five reported any purchase or use of Accrabond products and, of these five responses, only two arguably were favorable. Neither of these responses were from companies involved in the case.[9]

---

[6]*United States v. Ellender,* 947 F.2d 748 (5th Cir.1991).

[7]*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

[8]*Id.*

[9]The first response was from Gulfstream Aerospace Corporation, and stated:

> We have procured several products from 1988 to the present. These products do consist of sealants and adhesives. These type products are tested upon receipt at Gulfstream to the requirements of the product specification, regardless of who supplies the product. The history of testing on Accrabond supplied products was reviewed and no discrepancies were found that would substantiate the allegations.

> The second response was from Dayton-Granger, Inc., and stated:

> We have placed several orders with Accrabond which are

The sole report from a corporation that was involved in the case was from DME Corporation which stated:

> Our inspection records indicate that no Accrabond products have been used on any FAA product thus far. DME has in fact bought and used various compounds from the supplier in question, but these products have been used entirely on our military products. DME has already made statements to the Criminal Investigator for the Government, concerning the products we have received and what contracts those products were used on.

This statement is neutral and non-exculpatory;[10] it is immaterial to guilt and it is outside the scope of the *Brady* rule.[11] Dula's claim to the contrary is without merit.[12]

Dula also contends that these reports would have vitiated the basis for the court's upward departure in sentencing. We are not persuaded.

The upward departure stemmed from a finding that the Guidelines did not adequately consider Dula's conduct, which "not

---

> shown on the attached list. We have experienced no problems with the material, but we shall investigate further.

[10]The quality of Accrabond products is unrelated to the conduct charged in the indictments. The charged conduct stemmed from material misrepresentation about product substitution and testing to military specifications; whether or not the products actually conformed to these specifications is a matter of happenstance and is essentially irrelevant, as the district court properly noted.

[11]*United States v. Nixon,* 881 F.2d 1305 (5th Cir.1989).

[12]As cross-examination of DME's representative during trial revealed exculpatory information stronger than that in the report to the FAA (to wit, that DME had neither experienced nor had received any notice of problems with the Accrabond-supplied materials), any suppression of alleged *Brady* materials from DME was harmless. *See United States v. Garcia,* 917 F.2d 1370 (5th Cir.1990); *United States v. Cochran,* 697 F.2d 600 (5th Cir.1983).

4

only put at risk multimillion dollar military equipment, but also lives of American Servicemen."  The record reflects that an essential element of the government's case was that the inferior materials would, over time, deteriorate more rapidly than expected by the user, creating commensurate risks to both equipment and users;  neither Gulfstream's testing of products upon receipt nor Dayton-Granger's tentative endorsement negates this concern. Further, the risks envisioned by the district court arose from the use of military equipment from a plethora of manufacturers that incorporated Accrabond products in their wares, and the qualified satisfaction of one or two customers does not appreciably reduce these risks.

Concluding that there was no *Brady* violation and that the remainder of Dula's claims are without merit, the judgment of the district court is AFFIRMED.