United States Court of Appeals
Fifth Circuit

**F I L E D**
January 7, 2005

Charles R. Fulbruge III
Clerk

**REVISED FEBRUARY 9, 2005**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-50810
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

LORETTA TARANGO,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The Government appeals from the district court's order granting Lorretta Tarango's motion for a new trial. A jury found Tarango guilty of aiding and abetting her co-defendant, Dipakkumar Patel, in his efforts to defraud various federal health care programs by submitting false billing statements that failed to comply with the governing provisions of those programs. The Government

contends that the district court abused its discretion by granting the motion. We disagree, and for the reasons set forth below, affirm the district court's grant of a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Tarango was charged along with Patel in a two count indictment alleging that they conspired to defraud the Government by engaging in an intricate health care scheme designed to fraudulently bill both federally funded health care insurance programs, and private insurers. The indictment provided that Tarango, while working in her capacity as the office manager for Patel's medical practice, intentionally submitted false Health Care Finance Administration (HCFA) 1500 claim forms.[1] The indictment alleged that Patel would see between 50 and 100 patients per day for only a nominal amount of time, but would intentionally submit false claims that he had met with the individual patient for a much longer period. Apparently, it was not uncommon for Patel to submit a multitude of claims that, if the HCFA 1500 claim forms were read literally, it would have meant that Patel met with patients in excess of 24 hours per day. Patel would submit false diagnoses on the HCFA 1500 claim forms which were provided to health care insurers. Additionally, Patel would often waive deductible payments as an enticement to have patients return for more unnecessary medical visits.

The indictment alleged that Tarango played a role in facilitating Patel's fraudulent conduct. The underlying basis for the indictment stemmed from Patel's relationship with Prakash Alur, a supplier of Durable Medical Equipment (DME), including home oxygen units. Under Medicare's governing provisions, Alur was prohibited from filling in the applicable contents of HCFA 484 Form,

---

[1] HCFA 1500 claim forms are the standardized forms used when physician claims are submitted to insurance companies.

2

Section B.[2]  It was alleged that Alur would improperly provide a draft copy of a Section B form to Tarango who would then transcribe the information onto a new Section B form.  Thereafter, Patel would sign the document, falsely certifying the necessity of medical equipment. The indictment alleged that Tarango and Patel, along with Alur, fraudulently attempted to receive in excess of 5.3 million dollars by submitting false HCFA 1500 and 484 claim forms to the relevant health care insurers.

Count One of the indictment charged Tarango and Patel with conspiring to defraud a health care benefit program in violation of 18 U.S.C. § 371.[3]  Count Two of the indictment charged Tarango and Patel with aiding and abetting a scheme to defraud a health care benefit program in violation of 18 U.S.C. §§ 1347[4] and 2.[5]

---

[2] HCFA 484 Form, Section B is a form that must be completed by a treating physician before Medicare will provide coverage for home oxygen equipment.  The form must not be completed by a supplier of Durable Medical Equipment (DME).  The treating physician must ultimately provide a Certification of Medical Necessity (CMN) before coverage can be provided.

[3] 18 U.S.C. § 371 provides in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

[4] 18 U.S.C. § 1347 provides in relevant part:

> Whoever knowingly and willfully executes, or attempts to execute a scheme or artifice –

> (1) to defraud any health care benefit program; or

> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

3

Tarango and Patel were jointly tried. While he did appear for jury selection, Patel absconded prior to the trial's commencement. Moreover, the record reflects that his absence was a major local news story, in that it was the lead headline for the regional newspaper covering the trial. As it appeared that Patel would not be present at the trial, the district court gave the jury a limiting instruction and permitted Patel to be tried in absentia, while Tarango remained present throughout the entire proceeding. Over the course of the trial, the Government brought forth approximately 50 witnesses who testified principally about Patel's conduct, with only five witnesses testifying directly as to Tarango's complicity in the schemes enumerated in the indictment. The jury eventually returned a verdict, finding Tarango not guilty on Count One of the indictment (conspiracy), and finding her guilty on Count Two (aiding and abetting). Tarango's counsel moved for a new trial, pursuant to Federal Rule of Criminal Procedure 33,[6] on the grounds that she had been prejudiced as a consequence of being jointly tried with Patel.[7] The district court concurred, agreeing that it became

_____

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury . . . such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in the death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.

[5] 18 U.S.C. § 2 provides in relevant part that:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[6] Fed. R. Crim. P. 33 provides in relevant part:

Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interests of justice so requires.

[7] Our review of the trial transcript makes clear that the disproportionate weight of the evidence went towards proving that Patel conspired to defraud various federal health care programs. There was little witness testimony that Tarango had engaged in wrongdoing. Much of the testimony actually involving Tarango suggested that she would copy information originally provided to her by someone from Alur's office. This

4

apparent as the trial progressed that the parties should have been severed and granted the motion for a new trial.

The district court noted that, even in instances where multiple defendants are properly joined, a defendant may still be prejudiced by such joinder; and thus, a new trial may be warranted. The district court observed that much of the evidence and witness testimony focused exclusively on Patel, even though he was absent. The court was also troubled by the discordant nature of the evidence against the two defendants, specifically that a limited number of witnesses directly implicated Tarango. The principal role Tarango played, the Government alleged, was that she would copy information provided to her onto the HCFA 1500 and 484 claim forms that were eventually submitted to Medicare. These forms would indicate, for example, that Patel was requesting certain medical equipment for particular patients, even when such equipment was not medically necessary. The Government's case against Patel was so powerful, the court noted, that it was not disputed that Tarango, in her capacity as office manager, had submitted claim forms that contained fraudulent certifications of medical necessity. However, the court also noted that the crime of health care fraud is a specific intent crime and that minimal witness testimony supported the Government's contention that Tarango was, in fact, aware that her conduct necessarily constituted fraud.

Much of the evidence regarding Patel's knowledge of the false diagnoses and improper billing procedures was based on his medical expertise; this evidence was inadmissible against Tarango. The district court commented that this case presented circumstances expressly disfavored in a conspiracy prosecution involving multiple defendants, in that testimony that was allowed to be heard by the jury

_____

information would be transferred by Tarango, for example, onto a new HCFA 484, Section B claim form. Thereafter, Patel would sign the form as a treating physician, attesting to Medicare that a particular patient required DME, such as a home oxygen unit. However, little testimony suggests that Tarango was aware that what she doing was improper.

solely as it pertained to Patel was deemed to be probative as to the allegations against Tarango, even though the testimony was inadmissible against her. In effect, the court found that there was little evidence that Tarango had knowledge of, or had any specific intent to engage in, the conduct of which Patel was convicted. Moreover, the court found that the limiting instruction that it gave the jury was ineffective in insulating Tarango from the prejudicial effect of being joined with Patel.

On appeal, the Government contests the district court's order granting a new trial, arguing that the decision constituted an abuse of discretion. The Government contends that a new trial is inappropriate because there has been no showing that the verdict was the byproduct of any manifest injustice, and suggests instead that the jury's verdict was consistent with the evidence that was presented. In its view, Tarango was not prejudiced because Patel had absconded, and there was no "spillover effect" even if the disproportionate weight of the evidence centered on Patel's conduct, rather than anything that Tarango may have done to facilitate the fraudulent health care scheme.

The Government also avers that it will be forced to recall the multitude of witnesses that were brought forth in the original trial, and that the subsequent trial would likely last another four weeks, thereby placing an additional financial burden on taxpayers.[8] The Government believes that the district court, by granting the motion for a new trial, ignored testimony indicating that Tarango was cognizant that she was aiding and abetting a scheme to defraud Medicare. Ultimately, the Government suggests that Tarango was undone by her own testimony and that the jury's decision was proper given that Patel was found not guilty on two separate mail fraud counts, and that Tarango was found not guilty on the conspiracy count against her. The Government avers that this indicates that the jury was fully

---

[8] We recognize that costs are never an inconsequential consideration in the retrial of a defendant. Nonetheless, it is significant that the Government has never argued, whether in its briefing or during oral argument, that it will have any difficulty securing the presence of the witnesses that will be expected to be recalled at a retrial of Tarango.

capable of discerning which evidence was admissible and relevant as to the respective defendant. We will thus consider whether the district court erred by granting a new trial.

## DISCUSSION

A.    Standard of Review

We review a district court order granting a motion for a new trial for an abuse of discretion. See, e.g., United States v. Robertson, 110 F.3d 1113, 1116 (5th Cir. 1997);  United States v. Dula, 989 F.2d 772, 778 (5th Cir. 1993); United States v. Arroyo, 805 F.2d 589, 597 (5th Cir. 1986); United States v. Leal, 781 F.2d 1108, 1110 (5th Cir. 1986).

B.    Federal Rule of Criminal Procedure 33

Granting a motion for a new trial pursuant to Rule 33 is permissible if it is necessitated by the interests of justice. See Robertson, 110 F.3d at 1117. If granted, the Government would simply have a second opportunity to try the accused. See generally Miller v. United States, 224 F.2d 561, 562 (5th Cir. 1955). In determining whether to grant the motion, the district court must carefully "weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial," Robertson, 110 F.3d at 1117 (citing Tibbs v. Florida, 457 U.S. 31, 37-38, 102 S. Ct. 2211, 2215-16, 72 L. Ed. 2d 652 (1982)), but must not entirely usurp the jury's function, United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001), or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate. See, e.g., Robertson, 110 F.3d at 1118.

Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). Accord, e.g.,

7

Robertson, 110 F.3d at 1118; United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988). Similarly, while vested with discretion to grant a new trial pursuant to Rule 33 if necessary in accordance with the interests of justice, we have observed that this power should be exercised infrequently by district courts, unless warranted by "exceptional" circumstances. See United States v. Scroggins, 379 F.3d 233, 239 (5th Cir. 2004) (citation omitted); see also United States v. Sinclair, 438 F.2d 50, 51 n.1 (5th Cir. 1971).

In our capacity as an appellate court, we must not revisit evidence, reevaluate witness credibility, or attempt to reconcile seemingly contradictory evidence. See United States v. Dula, 989 F.2d 772, 778-79 (5th Cir. 1993). Instead, we must simply concern ourselves with whether or not the district court's ultimate decision in granting or denying the motion for a new trial constituted a clear abuse of its discretion. Id.

C.     Propriety of Joinder and Severance

Federal Rule of Criminal Procedure 8(b) provides that when multiple defendants are alleged to have participated in the same act or transaction, they may be charged together in the same indictment. The propriety of joinder will often be assessed by looking to the allegations contained in the indictment. See United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985). Moreover, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 937, 122 L. Ed. 2d 317 (1993), particularly when a conspiracy charge is involved. United States v. Neal, 27 F.3d 1035, 1045 (5th Cir. 1994).

There may, however, be instances when the joining of offenses or defendants will actually prove to be prejudicial, and thus, it may be necessary for a district court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); see also Schaffer v. United States, 362 U.S. 511, 516, 80 S. Ct. 945, 948, 4 L. Ed. 2d

8

921(1960) (observing that "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear").  If a proper initial determination has been made regarding the propriety of joining defendants, severance is warranted only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539, 113 S. Ct. at 938.  The granting or denial of a motion to sever will be reviewed for an abuse of discretion, United States v. Bieganowski, 313 F.3d 264, 287 (5th Cir. 2002), which, under these circumstances, is an exceedingly deferential standard.  See Neal, 27 F.3d at 1045 n.15 (characterizing overcoming the abuse of discretion standard as "rigorous" in the context of challenging the denial of a motion to sever).

## ANALYSIS

The Government maintains that the district court did in fact abuse its discretion.  The Government challenges the two grounds upon which the district court supported its ruling: (1) Tarango was prejudiced because Patel was absent from the trial; and (2) the disparity of evidence against Tarango versus that brought against Patel.  The Government notes that Tarango likely was not prejudiced because of Patel's absence, and may have in fact benefitted from the presumption that her failure to flee was suggestive of her innocence.[9]  Additionally, the Government argues that the district court provided a cautionary instruction regarding the Government's responsibility of separately proving the allegations against Patel and Tarango.[10]

---

[9] The district court observed that as the trial progressed it became clear the cautionary instructions that had been given to the jury regarding Patel's intentional flight, i.e., that if proved, this could be weighed by the jury in determining the guilt or innocence of Patel,  see generally United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir. 1979) (observing that flight prior to the commencement of trial infers a consciousness of guilt), inadequately shielded Tarango  from being prejudiced given that the jury's attention was "unavoidably" focused on  the missing Patel.

[10] We find it ironic that the Government seeks to benefit from this instruction on appeal, even though it strenuously objected to the jury receiving the instruction.

9

Similarly, the Government makes much of the fact that Tarango was acquitted of one of the counts against her. In its estimation, there was simply no showing that she was prejudiced by virtue of being tried along with Patel.[11] The Government believes that the district court failed to give consideration to the fact that numerous witnesses testified as to the extent of the fraud which occurred in Patel's office where Tarango served as the office manager. The Government similarly avers that a witness testified that he informed Tarango that Patel had double-billed him, and when confronted, Tarango did nothing to remedy the situation when asked to do so. The Government's primary argument is that, at the very least, Tarango was willfully blind to the degree of fraud and graft taking place in the office, and the verdict by and large was supported by the weight of the evidence.

Our analysis of the trial transcript confirms that Tarango suffered prejudice by being jointly tried with Patel. In fact, prior to the conclusion of the trial, the district court recognized the problems inherent in trying the two defendants together.[12] We believe that a necessary starting point of course is some of the evidence that was brought against Tarango. One witness, who formerly worked in association with Patel, testified that he informed Tarango that he was troubled by the medical office's billing procedures -- such as submitting bills for seemingly unnecessary blood tests. Tarango apparently responded that he would best be served by addressing his concerns directly to Patel. Others

---

[11] This assertion is countered by the district court's assessment of the profound disparity of evidence that was presented against the respective defendants.

[12] The district court expressed, in the context of denying a motion for judgment of acquittal, that given how the trial had progressed he was inclined to grant a new trial:

I will tell you all that I have had a very deep concern that having Ms. Tarango in this case under these circumstances with Dr. Patel gone has worked a substantial prejudice to her that may not be cured at all except by granting a new trial to her at the end of this case . . . [T]here is a really good chance for the first time in my career I would grant a new trial in a case like this because what I consider to be the unique circumstances here with Ms. Tarango sitting here alone having to bear the trauma of a trial when Dr. Patel, her employer, and the person who has I think in the face of overwhelming evidence left the jurisdiction of the Court, I am deeply concerned that as hard as I've tried, there could be such prejudice to Ms. Tarango in this case to require a new trial.

also testified that Tarango had sole responsibility for the office's billing procedures and that she had affixed her signature to billing statements that were sent to insurers, attesting that the medical information contained therein was accurate – when, in fact, the statements contained fraudulent information. This, however, has never been controverted, even by Tarango herself. In short, little evidence was presented to show that Tarango was aware that the medical diagnoses or the requests for medical equipment contained in the billing statements were false, and thereby could constitute illegal conduct on her part.[13]

Our principal concern which compels us to hold that Tarango should be granted a new trial stems, in large measure, from the clear prejudice that resulted from being tried alongside essentially an "empty chair," *i.e.*, Patel's, towards which the Government's case was fully centered upon. Similarly, we are troubled, just as the district court was, by the fact that the jury was permitted to hear a great deal of evidence that was inadmissible against Tarango. See generally United States v. Delli Paoli, 352 U.S. 232, 243, 77 S.Ct. 294, 303 (1957) (Frankfurter, J., dissenting) ("The Government should not have the windfall of having the jury influenced by evidence against a defendant which, as a matter of law they should not consider but which they cannot put out of their minds."). Courts have noted that a defendant may be prejudiced because he was jointly tried alongside an absent co-defendant. In United States v. Davidson, the Sixth Circuit held that due to the government's introduction of evidence that was probative as it pertained to an absent co-defendant, but inadmissible and prejudicial as to the defendant who remained present throughout the trial, a new trial was warranted. 936 F.2d 856, 861 (6th Cir. 1991). We believe that Davidson is particularly instructive as it relates to the exceptional circumstances presented in this matter.

---

[13] We believe that it is also significant, though by no means dispositive, that there has been no demonstration that Tarango received any remuneration because of her involvement in the scheme.

11

We do not mean to imply that because the preponderance of the evidence relates almost exclusively to one defendant in a multiple defendant conspiracy trial, the defendant who had quantitatively and qualitatively less evidence brought against them is presumptively entitled to a new trial, as a disparity of evidence in a trial involving multiple defendants does not in and of itself constitute prejudice. See Neal, 27 F.3d at 1045; see also United States v. Rocha, 916 F.2d 219, 229 (5th Cir. 1990). Similarly, Tarango was not prejudiced simply by the fact that her co-defendant was being tried in absentia. See United States v. Mikolajczyk, 137 F.3d 237, 241-42 (5th Cir. 1998) (distinguishing Davidson and finding no prejudice to defendant where co-defendant absented himself a few days after their joint trial had begun); but cf. United States v. Stratton, 649 F.2d 1066, 1083 (5th Cir. 1981) (noting that in some instances the absence of a co-conspirator can be prejudicial). Indeed, we are also mindful that when a jury returns a "split" verdict, wherein it finds a defendant guilty as to some charges but not as to others, there is a presumption that the jury was able to follow the trial court's instructions that the evidence was to be weighed against the co-defendants individually. See Neal, 27 F.3d at 1045.

However, given that there were approximately 50 witnesses who testified at trial–the disproportionate number of whom testified as to a missing co-defendant, that there was scant testimony that Tarango did anything improper other than draft the relevant HCFA claim forms as she was instructed to do by Patel, because the jury was permitted to hear a significant amount of inadmissible evidence (as it pertained to Tarango), and due to the degree of notoriety attending to Patel's absence, we find that the cumulative effect of these factors when viewed in their totality, strongly weigh against overturning the district court's determination.

Because Rule 33 is permissive and authorizes the grant of a new trial if the interests of justice so require, the district court's opinion evidences the requisite degree of circumspection necessary in

12

this admittedly unusual situation – carefully weighing the federal system's historic preference for joint trials of individuals who have been indicted together versus our concomitant concern that a defendant should not be prejudiced simply for the sake of judicial economy. Moreover, we believe that deference is owed to the district court. Our perspective only allows us to review the trial's transcript, whereas the district court's vantage point provided it with the opportunity to hear the witnesses and discern the jurors' reactions to what they heard and observed. See Arroyo, 805 F.2d at 599. As such, the district court's determination that Tarango suffered prejudice requiring that she be granted a new trial carries considerable weight. See id.; see also United States v. Pedrick, 181 F.3d 1264, 1272 (11th Cir. 1999) ("The district court saw the witnesses, heard all of the evidence, and is in the best position to evaluate whether [a defendant has] suffered compelling prejudice warranting a new trial.").

Therefore, for the foregoing reasons, and because the *overwhelming* nature of the Government's case focused exclusively on a conspicuously absent defendant, while demonstrably less evidence was presented to show that Tarango acted with the specific intent to aid and abet Patel's conspiracy to defraud federal health care programs, we hold that the district court did not abuse its discretion in concluding that the interests of justice warranted granting Tarango a new trial.

## CONCLUSION

Accordingly, the district court did not abuse its discretion in granting Tarango's motion for a new trial, and the judgment is hereby affirmed.

AFFIRMED.

CLEMENT, Circuit Judge, dissenting:

The majority disregards relevant case law and compelling evidence establishing that the district court abused its discretion in granting Tarango a new trial. A district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Joint trials not only promote judicial economy but serve the interests of justice by "avoiding the scandal and inequity of inconsistent verdicts" and "enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987); *see also United States v. Causey*, 185 F.3d 407, 416 (5th Cir. 1999); *United States v. Abner*, 825 F.2d 835, 845 (5th Cir. 1985).

The majority concludes that Tarango was prejudiced by the disparity in evidence presented against the two defendants and Patel's noticeable absence from trial. Neither reason justifies a new trial. The majority emphasizes that only five of the fifty witnesses at trial testified directly about Tarango's involvement in the health care fraud scheme. Some spillover effect, by itself, does not warrant severance. *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002); *United States v. Williams*, 809 F.2d 1072, 1085 (5th Cir. 1987). This Court has repeatedly held that limiting instructions are the appropriate remedy to cure prejudice caused by evidence that is admissible against one codefendant. *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001); *United States v. Rocha*, 916 F.2d 219, 228–29 (5th Cir. 1990) (holding that "severance is not required merely because the Government introduced evidence admissible only against individual co-defendants"); *United States v. Merida*, 765 F.2d 1205, 1219 (5th Cir. 1985) (asserting that severance is not needed if "the jury could sort out the evidence reasonably and view each defendant and the evidence relating to that

14

defendant separately").

Moreover, much of the evidence presented in the joint trial is relevant background to establish the existence and workings of the fraud scheme. The district court found that only six of the witnesses gave testimony admissible solely against Patel. The Government convincingly argues that if forced to retry Tarango, it would have to engage in the costly endeavor of presenting nearly all of the evidence entered at the joint trial. Severance, "required on the basis of a disparity in the evidence only in the most *extreme* cases," *Rocha*, 916 F.2d at 229, was inappropriate in this case.

The second rationale behind the majority's affirmance is equally unpersuasive. In overstating the effect of Patel's absence on Tarango's trial, the majority relies on *United States v. Davidson*, 936 F.2d 856, 861 (6th Cir. 1991). *Davidson*, however, is not "particularly instructive," *United States v. Tarango*, __ F.3d __ (5th Cir. 2004), because the defendants' charges were not sufficiently related: the defendant tried *in absentia* was charged with ten counts, including tax evasion and filing false income tax returns, which were unrelated to the single narcotics conspiracy charge against Davidson. *Davidson*, 936 F.2d at 861. It is undisputed that Tarango and Patel were properly joined as defendants alleged to have participated in the same act or transaction. FED. R. CRIM. P. 8(b). Neither Patel's absence nor the varying amounts of evidence presented satisfy the "required showing of factually specific and compelling prejudice as a result of the joint trial" with an absent codefendant to warrant a new trial. *Murr v. United States*, 200 F.3d 895, 904 (6th Cir. 2000).

The district court is provided a degree of discretion in determining whether to grant a motion for severance or new trial. Overstating the effects of the disparity in evidence or Patel's absence might not warrant reversing the district court's opinion. However, clear evidence indicates that

Tarango received a fair trial.[14]

First, the district court issued effective limiting instructions as to both the evidence presented which was inadmissible against Tarango and Patel's absence. There is a well-established presumption that juries are able to follow the court's instructions and compartmentalize the evidence against each defendant. *Zafiro*, 506 U.S. at 540–41; *Richardson*, 481 U.S. at 211; *United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995). Because severance of properly joined defendants is regarded as a last resort, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

Second, the jury reached a split verdict, acquitting Tarango on the conspiracy charge. If the disparity in evidence or Patel's flight "prevent[ed] the jury from making a reliable judgment about guilt or innocence," *id.*, the jury would have convicted Tarango on both counts. *See Bieganowski*, 313 F.3d at 288 (finding that the acquittal of one codefendant on three of five counts and another codefendant on one count supported the conclusion that the jury properly segregated evidence).

Third, the jury's verdict is supported by compelling evidence against Tarango. We have refused to find that a defendant has suffered prejudice from a joint trial when there is sufficient evidence to convict the defendant. *United States v. Griffin*, 324 F.3d 330, 364–65 (5th Cir. 2003); *United States v. Broussard*, 80 F.3d 1025, 1036–37 (5th Cir. 1996). The majority mischaracterizes the evidence at trial by stating that "little testimony suggests that Tarango was aware that what she was doing was improper." *Tarango*, __ F.3d at __. As Patel's office manager, Tarango received numerous notices of fraudulent billings violations from the state of Texas. Several witnesses

---

[14] Additionally, when a trial judge sets aside a jury verdict and orders a new trial, this Court's "deference to him is in opposition to the deference due to the jury." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). We therefore engage in a more rigorous review of the district court's decision to grant rather than deny a motion for a new trial. *Id.*; *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003).

recounted discussing the clinic's fraudulent practices with Tarango. One of these, Dr. Wasim Sheik received letters from Tarango warning him not to report his allegations to the authorities. Indeed, Tarango's own testimony indicated an intent to defraud the government. She admitted that during a seven-month period, she billed insurance companies for appointments for more than twenty-four hours per day, seven days a week. She conceded that there was no testing equipment in Patel's office to perform the oxygen level tests indicated on the forms she submitted to the government. She stated that she did not collect copayments from patients and that she billed an insurance company for visits by Patel when he was in jail after being indicted.

It is immaterial that witnesses testified that Tarango copied information provided to her by Alur onto the insurance forms, or that "little evidence was presented to show that Tarango was aware that the medical diagnoses or the requests for medical equipment contained in the billing statements were false." *Tarango*, __ F.3d at __. "Because it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom." *United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003). The Government's evidence, which undeniably established that Tarango was aware that the clinic was involved in questionable billing practices, provided the jury, at a minimum, compelling circumstantial evidence to convict Tarango of aiding or abetting a scheme to commit health care fraud.

I respectfully dissent from granting Tarango a new trial.

17