IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-20569

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

YONG PING LIU, also known as Mary Liu

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CR-00392-1

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Yong Ping Liu, also known as Mary Liu ("Liu"), appeals her conviction and sentence for one count of visa fraud pursuant to 18 U.S.C. § 1546(a). For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A B-1 visa allows a "non-immigrant alien" to come into the United States to conduct business on behalf of a foreign employer. To obtain a B-1 visa, the alien submits an application to the U.S. consulate in his home country. The visa

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

lasts for six months and does not allow the alien to work for any U.S. employers. To extend the visa, an alien may file an I-539 application with the U.S. Citizen and Immigration Services ("CIS") in the Department of Homeland Security.[1] An I-539 application must include the reason for requesting an extension, any effect it will have on the applicant's foreign employment or residency, evidence that the applicant's stay will be temporary, and an explanation of how the alien will support himself (e.g., bank statements). Commonly, an alien submits with his I-539 application a letter from his foreign employer establishing this information. Although such a letter is not required, it is the most common form of documentation and is considered sufficient for this purpose. The alien also must sign the I-539 form under a statement certifying, under penalty of perjury, that the information in the application and attached documents is "true and correct." At issue in this appeal is an I-539 visa application.

Liu was employed as a legal assistant and translator in the office of Yali Huang ("Huang"), an immigration lawyer practicing in Houston. Part of Liu's responsibilities included collecting the necessary documents for I-539 applications. This sometimes involved drafting letters for aliens specifying pertinent information about their foreign employers. For these letters, Liu often would use information from the alien's business card. Liu testified that she "nearly always" would give the letter back to the alien to obtain an authorized signature from the alien's employer. Liu also would sign certificates of accuracy for translations of letters from foreign employers.

This appeal involves Liu's work on a visa application for Yu Chung Tseng ("Tseng"), a confidential informant who went by the pseudonym Chenhong Dai in his dealings with Liu and Huang. Tseng is an alien from Taiwan who entered the United States illegally in 2002 and was later approached by Immigration

---

[1] CIS is the successor agency to the Immigration and Naturalization Service ("INS").

and Customs Enforcement ("ICE") agents to cooperate in that agency's investigation of Huang. The agents provided Tseng with a fake Chinese passport and outfitted him with a recording device for his visits to the law office.

Tseng first went to the law office on February 4, 2003, and discussed visa possibilities with Huang. On his second visit to the law office, on March 12, 2003, Huang recommended that Tseng seek a visa extension. After meeting with Huang, Tseng had a conversation with Liu. Liu asked Tseng, "Is your passport fake?" and he responded, "No, the passport is real but the company, there is no such company." Liu also asked Tseng, "Do you not have a company over there?" and Tseng responded "No, I don't have a company." Liu told Tseng that he needed a return airline ticket and a letter from a bank showing that he had over $3,000 in an account.

Tseng returned on March 27, 2003, at 1:45 p.m., and presented to Liu several documents an ICE agent had provided to him: a passport, a return airline ticket, a bank statement, and a business card for Hongyun Engineering Operations. Regarding the business card, Tseng told Liu, "it's a fake one. This was printed by me." Liu testified that she took this to mean that the information on the business card might be genuine even if the card itself was made by Tseng. Tseng also presented a certificate of deposit from a bank, admitting that he had made the form himself and that it did not come from a bank. Liu told Tseng that if the bank certificate was fake, he should not use it because "this is the United States." Liu told Tseng he would need to sign the form and that he should return later in the day.

Tseng returned to the law office at 3:30 that afternoon. There was some dispute over what happened regarding the employer letter. At issue is whether Liu gave Tseng a letter to bring back after his employer signed it, or whether Liu presented the letter for Tseng himself to sign when he returned to the office. Liu claims she prepared the letter for Tseng to have signed by an authorized

representative of his employer. The government contends that Liu drafted the letter and had Tseng forge the signature of his purported employer. Although the entire exchange was recorded, Liu and Tseng spoke in Chinese, and Liu and the government present different translations of a key passage.

Under the government's translation, Liu said upon Tseng's return to the office, "I have the letter. Come here and sign." Liu's counsel argued that the Chinese passage was properly translated as "Have you brought the letter with you?" During Tseng's testimony, he was asked to write, in Chinese, what Liu told him when he returned in the afternoon of March 27. The trial interpreter translated the written passage as "Letter is here. Sign." Later, that same interpreter revised his translation to "Letter is being brought here. Sign your name." A different translator testifying for the defense opined that the passage could be interpreted as either "Have you brought the letter with you?," "Here is the letter," or "Letter is being brought here."

Regardless of which interpretation prevails, Liu and Tseng completed the I-539 application and submitted it to CIS. In June 2003, Tseng's application for a visa extension was approved.

On October 31, 2006, Liu and Huang were charged in a five-count second superseding indictment with one count of conspiracy in violation of 8 U.S.C. § 1324 and four counts of visa fraud in violation of 18 U.S.C. § 1546(a).[2] Huang

---

[2] According to the visa fraud statute,

> Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact . . . [s]hall be fined under this title or imprisoned . . . or both.

18 U.S.C. § 1546(a).

was convicted of all five counts and is not a party to this appeal. Liu was acquitted of the first four counts, but a jury found her guilty of Count Five, which covered Tseng's visa application. The court imposed a sentence of eighteen months' imprisonment plus two years of supervised release and a $100 special assessment. Liu appeals her conviction and sentence.

## II. DISCUSSION

### A. Sufficiency of the evidence

#### i. Standard of review

Where a defendant objected to the sufficiency of the evidence at the trial level—as Liu did in this case—the standard of review is whether, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could find that the evidence supports the guilt of the defendant beyond a reasonable doubt. United States v. Lewis, 476 F.3d 369, 377 (5th Cir. 2007). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." United States v. Fuchs, 467 F.3d 889, 904 (5th Cir. 2006) (internal quotation marks omitted). The "standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct." Id. (internal quotation marks omitted). "All reasonable inferences must be drawn, and all credibility determinations made, in the light most favorable to the verdict." United States v. Villarreal, 324 F.3d 319, 322 (5th Cir. 2003).

#### ii. Analysis

Liu articulates four challenges based on the sufficiency of the evidence to support the jury's verdict. First, she contends that the government's evidence does not support a conclusion that Liu had the culpable mental state required to be convicted of the alleged crime. Liu claims that there is no evidence she knowingly submitted false information in Tseng's visa application. Liu notes

that the trial evidence actually suggested that she refused to accept false information from Tseng when she told him he should not use the forged bank records he attempted to submit.

However, the fact that Liu refused some forged documents does not mean she did not accept others. There also was substantial evidence that Liu knew that Tseng's application contained false information. According to Tseng's testimony, he told Liu that he was an air conditioning repair man in China, not an employee at Hongyun Engineering. In fact, Tseng testified that he told Liu that there was no such company in China and that his business card bearing the name of that same company was fake. Tseng also testified that when he returned to the office on the afternoon of March 27, Liu presented him with a letter she had created under Hongyun letterhead and asked him to sign.

Forensic computer evidence showed that the letter was created on Liu's computer at 2:47 p.m. and printed at 3:42 p.m. that same day. Because Tseng returned to the office at 3:30, the government argues that the timing of this evidence supports the conclusion that Liu herself created the fraudulent letter, printed it for Tseng, had him forge his employer's signature, and submitted it with his application. Thus, the government presented substantial inculpatory evidence, and a reasonable jury could have found that Liu had the requisite mental state to support a conviction.

Second, Liu argues that because the I-539 form does not require a letter from a foreign employer, Liu was entitled to rely on assurances from Tseng that he was employed by a foreign employer even without a legitimate letter. Liu cites the instructions for filing the I-539 form, which she notes do not explicitly require a letter from a foreign employer.[3] However, by a plain reading of 18

---

[3] The jury heard the testimony of an adjudications officer with the CIS, who noted that although such a letter does not need to be from the applicant's employer, the most common form of documentation used to support a visa extension request is a letter from a foreign employer.

U.S.C. § 1546(a), the question of whether the I-539 instructions required a letter from a foreign employer is immaterial to the question of whether Liu knowingly submitted the form that included false statements. Neither party disputes that Tseng's certification that all of the materials in his application were true was an untruth. The question at trial was not whether Liu could have relied on Tseng's statements about his foreign employment, but whether she knowingly submitted false information.

Third, Liu argues that the government established no motive for her to commit immigration fraud. Liu earned $35,000 per year for her work and claims she did not profit financially from any alleged immigration fraud. However, motive is not an element of the charged offense. The government put forth sufficient evidence to prove each element of the offense, and Liu provides no support for her claim that her alleged lack of motive should undermine the verdict.

Finally, Liu contends that the jury's temporary deadlock is an indication that there was insufficient evidence to support the conviction. Although the time the jury deliberated might be relevant to Liu's challenge to the court's Allen charge, see infra, it is immaterial to Liu's sufficiency-of-the-evidence challenge. Marx v. Hartford Accident & Indem. Co., 321 F.2d 70, 71 (5th Cir. 1963) (per curiam) ("We cannot hold an hour-glass over a jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial.").

Therefore, we conclude that the jury's verdict was supported by the evidence, and the district court properly denied Liu's motions for judgment of acquittal.

B.    Jury instructions

Liu challenges the district court's jury instructions for the first time in this appeal. She alleges that the district court failed to properly define "false statement" and erred in submitting a "reckless indifference" instruction to the jury.

### i. Standard of review

This court reviews a challenge to jury instructions for abuse of discretion if the alleged error was preserved below. United States v. Daniels, 281 F.3d 168, 183 (5th Cir. 2002). We will not reverse "unless the instructions taken as a whole do not correctly reflect the issues and law." United States v. Simmons, 374 F.3d 313, 319 (5th Cir. 2004) (internal quotation marks omitted).

Where, as here, the appellant did not raise an objection in the trial court, this court reviews for plain error. Id. Plain error occurs when "(1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights." United States v. Izaguirre-Losoya, 219 F.3d 437, 441 (5th Cir. 2000) (internal quotation marks omitted). Even if those factors are met, this court has discretion to affirm unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. In this case, Liu concedes that she did not properly preserve these objections to the jury instructions at trial, so the plain error standard applies.

### ii. Analysis

The visa fraud statute requires a showing that the defendant "knowingly" made or presented a "false statement" in an application, affidavit, or other document required by the immigration laws. See 18 U.S.C. § 1546(a). The district court gave the following jury instructions for visa fraud, Counts Two through Five:

> Title 18, United States Code, Section 1546(a), makes it a crime for anyone to knowingly subscribe as true any false statement with respect to a material fact in any application or other document required by the immigration laws or regulations or to knowingly

present such applications or other documents containing such false statements. In this case, Counts Two through Five of the Indictment charge the defendants with knowingly presenting applications or petitions that contained false statements.

For you to find a defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

<u>First</u>: That the defendant knowingly presented to the Immigration and Naturalization Services or Citizenship and Immigration Services an application or petition required by the immigration laws prescribed thereunder;

<u>Second</u>: That the application or petition presented contained a material false statement made under penalty of perjury or knowingly subscribed as true;

<u>Third</u>: That the defendant knew that the false statement made in the submitted application or petition was false.

A statement or representation is "false" or "fraudulent" if it is known to be untrue or is made with reckless indifference to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.[4]

Liu first argues that these instructions are incorrect because the definition of "'false' or 'fraudulent'" does not apply the "with intent to defraud" requirement to the "known to be untrue" and "reckless indifference" clauses of the definition's first sentence. The visa fraud statute at issue in this case, however, requires only that a defendant act "knowingly"; it contains no requirement of "intent to defraud." See 18 U.S.C. § 1546(a). And no Fifth Circuit precedent compels an "intent to defraud" instruction in a prosecution under this statute.[5]

---

[4] The district court adapted the Fifth Circuit pattern jury instructions for mail fraud in defining the required mental state for visa fraud.

[5] Liu contends that several Fifth Circuit cases require this instruction, citing United States v. Dillman, 15 F.3d 384, 393 (5th Cir. 1994) (requiring a showing of "intent to defraud" in jury instructions in a bank fraud prosecution); United States v. Gunter, 876 F.2d 1113, 1119-20 (5th Cir. 1989) (same); and United States v. Chavis, 772 F.2d 100, 108 (5th Cir. 1985) (requiring a showing of "intent to defraud" in jury instructions in a mail fraud prosecution). However, these cases all apply to different criminal statutes that do include "intent to defraud" elements. Dillman and Gunter were prosecutions under the bank fraud statute, which applies

Liu next argues that the "reckless indifference" language used in the instructions impermissibly lowered the required mental state for this crime below the statutorily defined mental state of "knowingly." The instructions clearly state that the jury must find beyond a reasonable doubt "[t]hat the defendant knew that the false statement made in the submitted application or petition was false." The next sentence, however, provides that a "statement or representation is 'false' or 'fraudulent' if it is known to be untrue or is made with reckless indifference to its truth or falsity." Liu argues that these conflicting statements could have allowed the jury to convict her based on a mens rea lower than "knowingly."

Liu analogizes to another false statement statute, 18 U.S.C. § 1001, which defines an offense for an individual who "knowingly and willfully . . . makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" in any matter within the jurisdiction of the federal government. 18 U.S.C. § 1001(a). That offense is defined similarly to the visa fraud offense, which defines a crime for "knowingly present[ing] any such application, affidavit, or other document which contains any such false statement." 18 U.S.C. § 1546(a).

We have held that § 1001 "requires proof that the defendant had the specific intent to make a false or fraudulent statement deliberately or at least with reckless disregard of the truth and with the purpose to avoid learning the truth." United States v. Tamargo, 637 F.2d 346, 351 (5th Cir. Unit B Feb. 1981). In other words, § 1001 allows a "reckless disregard" instruction only if the

---

to a defendant who "knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud . . . ." 18 U.S.C. § 1344(1); see also United States v. Saks, 964 F.2d 1514, 1518 (5th Cir. 1992) (discussing how the "scheme to defraud" language of § 1344 requires a showing of intent to defraud). Chavis was a prosecution for mail fraud, which also is defined as including a "scheme or artifice to defraud." 18 U.S.C. § 1341.

defendant also acted "with the purpose to avoid learning the truth." Id. We have not decided whether the same requirement would apply to § 1546.

Liu also cites to pattern jury instructions for False Statement to Firearms Dealer, 18 U.S.C. § 922(a)(6), and False Statements in Bank Records, 18 U.S.C. § 1005, both of which define the mens rea and the element of falsity without reference to recklessness. See Fifth Circuit Pattern Jury Instructions (Criminal) § 2.45 (for § 922(a)(6): "A statement is "false or fictitious" if it was untrue when made and was then known to be untrue by the person making it."); id. § 2.50 (for § 1005, requiring a showing that "the defendant made a false entry [in a bank record]. . . [and] [t]hat the defendant did so knowing it was false"). Notably, however, both of these criminal statutes require proof of an additional intent element beyond those required under § 1546. See 18 U.S.C. § 922(a)(6) (requiring a showing that the false statement was "intended or likely to deceive"); id. § 1005 (requiring a showing that a false entry was made "with intent to injure or defraud"). Thus, it is unclear how relevant these instructions are for a statute that lacks that additional intent requirement.

Because Liu never objected to the "reckless indifference" language, the district court did not have the opportunity to consider whether it might have been appropriate, thus we review only for plain error. We admit that the jury instructions in this case are not a model of clarity. Nevertheless, we do not believe they constitute plain error. Liu concedes that there was no evidence to support a conclusion that Liu acted recklessly. In addition, the "reckless indifference" language arguably modifies only the falsity of a statement by the person making the statement ("made with reckless indifference"), not the mental state of the person submitting a document that contained the statement, which is unambiguously defined as knowingly. Finally, as discussed above, the prosecution presented overwhelming evidence that Liu knew the statements in

11

the application were false. Therefore, although we might have written the jury instructions differently, we find no plain error.

## C. Prosecutorial misconduct

During the government's cross-examination of defense witness Yan Song, the husband of Liu's co-defendant Yali Huang, the following exchange occurred:

> Q    Mr. Song, this country has provided a lot of opportunities for you and your wife, hasn't it?
> A    Yes, sir.
> Q    So given all those opportunities, how does it feel to come into federal court in front of this judge and these 13 jurors and commit perjury?

The court sustained the defense's objection and instructed the jury to disregard the comment. The defense immediately moved for a mistrial, which the court denied.[6] Liu appeals that ruling.

### i.    Standard of Review

The district court's denial of a motion for mistrial is reviewed for abuse of discretion. United States v. Wyly, 193 F.3d 289, 298 (5th Cir. 1999).

### ii.    Analysis

"'Improper comments by a prosecutor may constitute reversible error where the defendant's right to a fair trial is substantially affected.'" United States v. Mendoza, 522 F.3d 482, 491 (5th Cir. 2008) (quoting United States v. Andrews, 22 F.3d 1328, 1341 (5th Cir. 1994)). In evaluating a claim of improper

---

[6] The exchange was as follows:

| | |
|---|---|
| MR. DAVIS: | Move for a mistrial. |
| THE COURT: | Pardon me? |
| MR. DAVIS: | Move for a mistrial. |
| THE COURT: | Right in front of the jury you're moving for a mistrial? |
| MR. DAVIS: | No. Well, I guess so. |
| THE COURT: | Well, you did. |
| MR. DAVIS: | I guess I did. |
| THE COURT: | And I'll give you -- the answer is overruled. |
| MR. DAVIS: | Okay. |

arguments, the court asks (1) whether the prosecutor's remark was legally improper, and if it was, (2) whether the remark prejudiced the defendant's substantive rights. Id.

We first consider whether these comments were in fact improper. The offending remarks came after Song made far-fetched claims about the legitimacy of Ultra Controls, Inc., a company listed in some of the visa applications relevant to this case. For example, Song agreed with the prosecutor's statement that in nine years of the company's existence, the company had "never completed a dollar's worth of transactions." Song also produced the purported business records of Ultra Controls for its nine years of existence, which was only a three-inch stack of documents. Although letters supporting several visa applications variously stated that Ultra Controls was a printing pallet equipment business, an automotive-related business, and a software company, Song admitted that none of the documents in the business records referred to printing pallet equipment, auto parts, or banking software, nor could he produce any documentation to establish that Ultra Controls was involved in any of these industries.

The government argues that, in this context, it was not improper to ask the witness to comment on the truthfulness of his own testimony. The Seventh Circuit has held that although ultimate questions of credibility are for the jury, a prosecutor may "ask[] a witness to remark on the truthfulness of her own testimony because the witness's reaction and response are proper fodder for the jury's credibility determinations." United States v. Freitag, 230 F.3d 1019, 1024 (7th Cir. 2000). We have held that it is not improper for the government to tell a witness the consequences of committing perjury. United States v. Thompson, 130 F.3d 676, 687 (5th Cir. 1997). We need not decide whether the comment in this case was improper because, even if it was, it did not result in reversible error

in the context of this trial because it did not affect the defendant's substantive rights.

In deciding whether the comment affected Liu's substantive rights, this court looks to "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the defendant's guilt." United States v. Lowenberg, 853 F.2d 295, 302 (5th Cir. 1988). Liu argues that this comment was "highly prejudicial, improperly argumentative and caused undue harm to appellant." Liu contends that the government's perjury accusation was unduly prejudicial to an otherwise credible witness and that the district court's instruction was insufficient to cure the harm.

Taken in light of the entire trial, it is difficult to see how this comment affected Liu's substantive rights. Song's testimony related only to his involvement with Ultra Controls, which was relevant only to the counts for which Liu was acquitted. Ultra Controls was referenced as a domestic employer for letters used in some of the visa applications in this case, but not in the application at issue in Count Five. In addition, the court issued an immediate curative instruction, and the prosecution did not refer to the question during closing argument. Furthermore, the substance of Song's testimony relates in no way to the facts underlying Liu's conviction, which are substantial and sufficient to support the conviction. Therefore, we conclude that the district court did not abuse its discretion in denying Liu's motion for a mistrial on prosecutorial misconduct.

D.    Extrinsic evidence of prior conduct

Liu objects to the entry into evidence and questioning surrounding a biographical information form she submitted with her own I-485 application for permanent U.S. residency that she filed years prior to the facts underlying this case. On the form, Liu stated that she was employed by Amerise, Inc., as an

engineer. The address for Amerise was the same as the address listed as Liu's home address. The form itself was admitted into evidence without objection.

During questioning of an ICE agent, the government pointed out that the two addresses were the same and implied that Amerise was not a legitimate company. At that point, in a side bar, the defense objected to use of the form as evidence of wrongful acts under Federal Rule of Evidence 404(b).[7] The prosecution stated that it only sought to establish Liu's loyalty to her employer and co-defendant, Huang, because Huang had sponsored Liu's visa application. The court overruled the objection but warned that it would not allow 404(b) evidence to be presented. Thereafter, the prosecution again noted that the address for Liu's employer, Amerise, was the same as her home address.

Later in the trial, during the government's cross-examination of Liu, the prosecutor repeated this allegation:

BY MR. VARNADO:

Q     Ms. Liu, isn't it true that you never worked at a company called Amerise, Inc., and all this is is the same address as your residence here at 6501 Ranchester and you falsely claimed to be an engineer in support of your biographical information on your green card application?

MR. ERVIN:     Same objection, Your Honor.

THE COURT:     Overruled.

---

[7] The questioning immediately prior to the side bar was as follows:
Q     And what job is listed beneath that?
A     It indicates she was employed at Amerise, Incorporated, at 6501 Ranchester.
Q     In what position?
A     As an engineer.
Q     Does this form also ask where she lives?
A     Yes.
Q     And what does she list -- what's that middle address where she lived?
A     The middle address is 6501 Ranchester Drive, Number 206.
Q     Same address as this supposed company for which she worked as an engineer?

MR. ERVIN:      Relevance.

THE COURT:    I'm sorry, I didn't mean to cut you off. Go on.

MR. ERVIN:      No. Relevance and violation of 404(b).

THE COURT:    Overruled.

THE WITNESS:  I didn't lie.

BY MR. VARNADO:

Q    You're asking this jury to believe that you were an engineer at the Happy Village Apartments?

A    Because the company used that address.

Q    A company just happened to use your address; is that right?

A    The registered office address.

THE COURT:    Of the whole company was at your apartment?

THE WITNESS:  Yes.

BY MR. VARNADO:

Q    Ms. Liu, are you aware that Texas Work Force Commission reports no wages for a company Amerise, Inc.?

A    This is a new company.

Q    Okay. Well --

THE COURT:    How new?

THE WITNESS:  1994.

At that point, the government sought to introduce a certified copy of the Texas Workforce Commission ("TWC") records indicating no wages had been paid by Amerise, Inc. Liu's counsel objected on the basis of relevancy, and Huang's counsel objected on the basis of Rule 608 and Rule 404; the court overruled the objections.

The government persisted in questioning Liu about whether she was legitimately employed by Amerise as an engineer. There was no further defense

objection. On redirect, Liu's counsel elicited testimony that Amerise was a startup company created by Liu and her brother. The company dealt in import and export of electrical equipment, including helping Chinese companies looking for manufacturing in the United States. Liu testified that she used her knowledge of mechanical equipment and metallurgy to help her brother with the company.

Liu now contends that this line of questioning—including, presumably, the TWC records—should not have been admitted under Rule 404(b) or Rule 608(b). In the alternative, Liu argues the evidence should have been excluded as unduly prejudicial under Rule 403.

i.     Standard of Review

This court reviews a district court's evidentiary rulings for abuse of discretion. United States v. Sanders, 343 F.3d 511, 517 (5th Cir. 2003). If the court finds abuse of discretion, the harmless error doctrine applies. Id. For any evidentiary ruling to be reversible error, the improperly admitted evidence must have substantially prejudiced the defendant's rights. Id. at 519. Admission of evidence without objection at trial is reviewed for plain error. United States v. Duffaut, 314 F.3d 203, 209 (5th Cir. 2002).

ii.     Analysis

"Whether Rule 404(b) or Rule 608(b) applies to the admissibility of other-act[s] evidence depends on the purpose for which the prosecutor introduced the other-acts evidence." United States v. Tomblin, 46 F.3d 1369, 1388 (5th Cir. 1995). Rule 404(b) applies if the other-acts evidence is relevant to an issue in the case, such as the intent of the defendant. Id. Rule 608(b) applies when such evidence is used to impeach the witness or to show character for untruthfulness. Id. The government argues that its questioning of Liu's past truthfulness was proper under Rule 608(b), and Liu's immigration form and the TWC records were properly admitted under Rule 404(b).

17

Rule 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

FED. R. EVID. 608(b). The government concedes that the TWC records could not have been admitted under Rule 608(b), and therefore must have been admitted as substantive evidence of intent under Rule 404(b). See United States v. Morgan, 505 F.3d 332, 340 (5th Cir. 2007) ("Rule 608(b) does not allow extrinsic evidence of specific instances of misconduct outside of cross-examination . . . ."). Similarly, Rule 608(b) would not allow Liu's own immigration form to be admitted. However, the government contends that its questioning of Liu regarding the truthfulness of her answers in her prior visa application was proper impeachment evidence under Rule 608(b).

Because Liu testified at trial, her character for truthfulness became an issue, allowing the government to inquire into prior bad acts under Rule 608(b). See Tomblin, 46 F.3d at 1388 ("A defendant makes his character an issue when he testifies."). A prior false visa application would serve to impeach Liu by contradicting her testimony that she had never filed a document with the immigration agency that she knew to be false. The district court thus did not abuse its discretion in finding the government's cross-examination of Liu on the truthfulness of her answers in her own immigration form permissible under Rule 608(b).

Admission of the actual documents—Liu's immigration form and the TWC records—is a closer call. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). This court employs a two-prong test to review the admissibility of extrinsic evidence under Rule 404(b). Sanders, 343 F.3d at 517-18. First, the court must determine whether the evidence is "relevant to an issue other than the defendant's character, i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. at 518. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." Id. (internal quotation marks omitted).

Liu claims that evidence of her answers in her visa application was introduced only as character evidence in an attempt to prove conformity therewith, in violation of Rule 404(b). The government argues that this evidence could have been admitted to show Liu's intent under 404(b). Because Liu stated in her direct testimony that she did not intend to file false documents, the government claims that evidence suggesting that she previously had filed false documents could be admissible as proof of intent under Rule 404(b). See Morgan, 505 F.3d at 340-41. If Liu had previously lied in a visa application, that could undermine her claim that she did not intend to present a false statement in the visa applications at issue.

This court has previously expounded on the use of Rule 404(b) evidence to show intent:

Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from

19

the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). The charged and extrinsic offenses must be similar, and "relevancy is determined by comparing the state of mind of the defendant in perpetrating the respective offenses." United States v. Gordon, 780 F.2d 1165, 1173 (5th Cir. 1986).

In Gordon, for example, evidence of the defendant's prior attempt to defraud an insurance company was relevant because it showed his intent to defraud as part of his current insurance fraud prosecution. Id. at 1174. The prosecution alleged that Gordon attempted to defraud his insurer by having two men take his eighteen wheeler tractor-trailer and cut it up into parts so Gordon could collect insurance money on the truck. Id. at 1168. At trial, the government offered the testimony of those same two men, who alleged that a month prior to the truck-related fraud, Gordon had asked the men to burn down his house so he could collect insurance money. Id. at 1173. The court concluded that the "state of mind inherent in the commission of such nearly identical offenses would necessarily be the same," and therefore, the testimony was relevant under 404(b). Id. at 1174.

In this case, the prior alleged offense and the current offense both involve false statements in visa applications involving the visa applicant's employer. However, that is where the similarity ends. A suggestion that Liu had lied in her own visa application does not bear on a non-character issue in this case, where the major issue in dispute was whether Liu knew the statements in Tseng's application were false. The proffered evidence at issue functions more as inadmissible character evidence used to prove conformity therewith. In other words, the government basically argues that Liu lied in the past, therefore she

20

must be lying now. This is the type of evidence that is expressly inadmissible under Rule 404(b).

Nevertheless, we find that this error was harmless. "An error is harmless if the reviewing court is sure, after viewing the entire record, that the error did not influence the jury or had a very slight effect on its verdict." United States v. Rodriguez, 43 F.3d 117, 123 (5th Cir. 1995). The jury acquitted on four other counts but convicted Liu on Count Five, where the evidence was very strong. The disputed evidence could have had no more than a very slight effect on the jury's verdict, especially given the substantial amount of other inculpating evidence, which included highly persuasive and reliable evidence such as audio recordings and computer records. In addition, Liu's testimony on redirect—in which she had a chance to defend the legitimacy of Amerise, Inc.—removed any possibility of undue prejudice. She had a substantial opportunity to explain the background of Amerise, including why its address was the same as her own and why the company did not appear on TWC records. Therefore, we conclude that this error did not influence the jury's decision to convict Liu on Count Five.

E.    Allen charge

The trial concluded and the jury began its deliberations at 4:08 p.m. on Wednesday, February 7, 2007; the judge informed the jury that the court and the attorneys would not be available after 5:00 that evening. The jury deliberated on Thursday, February 8 but did not reach a verdict. On Monday, February 12, at 11:34 a.m., the jury sent the following note to the court:

> The jury cannot come to a conclusive decision, not guilty or guilty, by all. We voted Thursday afternoon, discussed this morning and voted again. Some votes have changed since Thursday; but we, the jury, are still deadlocked.

The government requested an Allen charge,[8] and the defense requested that the charge state simply, "continue to deliberate."  The court gave the instruction, "Please continue your deliberations."  At 3:38 that afternoon, the jury sent another note, stating, "We have unanimous agreement on half the counts. At this point we are hopelessly deadlocked on the other half."

The government requested a modified Allen charge; the defense objected, requesting instead a repetition of the "Please continue to deliberate" instruction. The court overruled that objection and gave the following instruction:

> I'm going to have a set of instructions for you at this time.  I'm going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case.  And I have a few additional comments I would like for you to consider as you do so.
>
> This is an important case.  The trial has been expensive in time, effort, and money to both the defense and the prosecution.  If you should fail to agree on a verdict on the remaining counts, the case is left open and must be tried again.  Obviously, another trial would only serve to increase the cost to both sides and there's no reason to believe that the case can be tried again by either side better or more exhaustively than has been tried before you.
>
> Any future jury must be selected in the same manner and from the same source as you were chosen.  And there's no reason to believe that the case would ever be submitted to 12 men and women more

---

[8] In Allen v. United States, 164 U.S. 492, 501 (1896), the Supreme Court held that if a jury is having difficulty reaching a unanimous verdict, it is permissible to instruct it

> that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself.  If, []on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

conscientious, more impartial, or more competent to decide it or that more or clearer evidence could be produced.

Those of you who believe that the Government has proved the Defendant guilty beyond a reasonable doubt should stop and ask yourself if the evidence is really convincing enough given that the other members of the jury are not convinced.

And those of you who believe that the Government has not proved the Defendant guilty beyond a reasonable doubt should stop and ask yourself if the doubt you have is a reasonable one given that other members of the jury do not share your doubt.

Remember at all times that no juror is expected to yield conscientious opinion he or she may have as to the weight or the effect of the evidence. But remember also that after full deliberation and consideration of the evidence in your case, it's your duty to agree upon a verdict, if you can do so, without surrendering your conscientious opinions.

You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty. You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary.

As I often do -- and I mentioned to the attorneys -- I want you to turn to Page 3 of the instructions. This is just at the beginning of the instructions, and I want to read it again to you and just remind you.

You, as jurors, are the judges of the facts; but in determining what actually happened in this case, that is, in reaching your decision as to the facts, it's your duty to follow all of the rules of law as I explain them to you. You have no right to disregard or give special attention to any one instruction or to question the wisdom or correctness of any rule I may state to you.

You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It's your duty to apply the law as I give it to you regardless of the consequences. It's also your duty to base your verdict solely upon the testimony and evidence in the case without prejudice or sympathy. That was the promise you made and the oath that you took before being accepted by the parties as jurors in this case and they have the right to expect nothing else.

I will now ask that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions I've previously given to you.

Thank you. Return and continue your deliberations.[9]

The jury was excused to continue deliberations at 3:50 p.m. and returned with its verdict at 1:53 p.m. the following day. On appeal, Liu argues that the Allen instruction in this case was coercive.

i.     Standard of Review

This court reviews the decision to give an Allen instruction for abuse of discretion. United States v. Lindell, 881 F.2d 1313, 1320 (5th Cir. 1989).

ii.     Analysis

District courts have broad discretion to give Allen charges when the jury indicates deadlock. United States v. Rivas, 99 F.3d 170, 175 (5th Cir. 1996). In reviewing a modified Allen instruction, the court asks whether the charge meets the following requirements: "(1) the semantic deviation from approved Allen charges cannot be so prejudicial to the defendant as to require reversal, and (2) the circumstances surrounding the giving of an approved Allen charge must not be coercive." Lindell, 881 F.2d at 1321 (internal quotation marks omitted).

Liu argues that the Allen charge coerced the jurors into finding her guilty on Count Five. Liu argues that (1) even a verbatim reading of the approved Allen charge can be deemed coercive based on the circumstances of the case, and (2) the timing of the court's instruction in this case was coercive because the jury had previously informed the court that they were hopelessly deadlocked.

Liu relies primarily on United States v. Bailey, 468 F.2d 652 (5th Cir. 1972).[10]   In Bailey, in deciding whether an Allen charge was coercive, we

_____

[9] The judge hewed strictly to the pattern jury instructions until the paragraph beginning "As I often do . . . ."

[10] The appellants in Bailey claimed the jury's verdict was coerced based on the giving of the Allen charge, the lateness of the hour, the inclemency of the weather, the danger of travel on the roads, and the fact that it was a Friday evening and that many jurors were women. Appellant basically argues that the jurors were more interested in returning any verdict than in returning the

considered (1) "'whether the interval between the retiring of the jury and the delivery of the instruction was so short that the trial court abused its discretion in calling the jury back and urging them to reach agreement'"; and (2) "'whether the period between the delivery of the charge and the rendering of the verdict was so brief as to give rise to an inference that the jury was coerced by the instruction.'" Id. at 664 (quoting Note, Due Process, Judicial Economy, and the Hung Jury: A Reexamination of the Allen Charge, 53 VA. L. REV. 123, 129-30 (1967)).

The Bailey court concluded that an instruction given three-and-a-half hours after the jury began deliberations was not coercive, and that the one-and-one-half-hour period between the instruction and the verdict also did not imply coercion. Id. at 664-65 (citing Andrews v. United States, 309 F.2d 127, 129-30 (5th Cir. 1962) (holding periods of one hour and five minutes before the Allen charge and 25 minutes between the charge and verdict not to be coercive)). Although the Bailey court criticized the Allen charge and pointed out other circuits' efforts to abolish it or limit its use, it concluded that binding Fifth Circuit precedent approved use of the Allen charge. Id. at 666-69. In Liu's trial, the jury deliberated for nearly two full days before receiving the full Allen charge and another afternoon and morning before arriving at a verdict. Under Bailey, this timing does not suggest coercion, and the district court did not abuse its discretion.

F.    Obstruction of justice sentence adjustment

Liu's Presentence Investigation Report ("PSR") recommended an offense level of 11 and criminal history category of I, which correspond to a Guidelines sentencing range of eight to fourteen months. At sentencing, the court applied

---

"correct" verdict.
Bailey, 468 F.2d at 664 .

25

an upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. The district court provided the following reasoning for applying this enhancement:

> I believe, after sitting and listening to the entire trial, together with most especially this defendant's testimony at trial, I believe that this defendant testified falsely when she said she did not have the confidential informant sign a fraudulent invitation letter from a Chinese company and that the I-539 application relating to the extension of his [B-1] visa in her presence. She stated that it was done outside. When the [confidential informant] came to the law office of Yali [Huang] on that afternoon of March 27th, 2003, Ms. Liu claimed that she had previously given this confidential informant the letter and the application, and he returned with it to the office itself. I believe the testimony certainly will flesh out the testimony of this defendant and all of the other testimony in this case.

The enhancement increased Liu's sentencing range to twelve to eighteen months. The district court imposed a sentence of eighteen months, and Liu challenges the obstruction of justice enhancement.

### i. Standard of Review

"A district court's finding that a defendant has obstructed justice under section 3C1.1 is a factual finding and thus, reviewed for clear error." United States v. Storm, 36 F.3d 1289, 1295 (5th Cir. 1994).

### ii. Analysis

U.S.S.G. § 3C1.1 provides,

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2006). Examples of conduct covered under this rule are committing perjury and providing materially false information to a judge. Id. at cmt. n.4. For the purposes of the Guidelines, "'[m]aterial' evidence, fact, statement, or information . . . means evidence, fact, statement, or information

that, if believed, would tend to influence or affect the issue under determination." Id. at cmt. n.6. The Guidelines also state that the § 3C1.1 enhancement is not appropriate for inaccurate statements that result from "confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." Id. at cmt. n.2.

The Supreme Court has held that a district court must establish a factual predicate to apply the obstruction of justice enhancement: "[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." United States v. Dunnigan, 507 U.S. 87, 95 (1993). In Dunnigan, the Court also adopted the definition of perjury from the federal perjury statute as relevant to this inquiry: "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. at 94 (citing 18 U.S.C. § 1621(1)). In laying the factual predicate, the Court noted that it is "preferable for a district court to address each element of the alleged perjury in a separate and clear finding," but it is sufficient for a district court to make a finding of obstruction of justice that "encompasses all of the factual predicates for a finding of perjury." Id. at 95.

Liu argues that because the district court failed to make an explicit finding that Liu's false statements were material, the court failed to establish the factual predicate for this enhancement. Liu cites United States v. Laury, 985 F.2d 1293, 1308 (5th Cir. 1993), for the proposition that a district court must make a separate and clear finding on each element of perjury. But Laury imposes no such requirement. In fact, Laury simply cites the Dunnigan standard that a district court must make a finding that encompasses all of the factual predicates

27

for a finding of perjury. Id.; see also United States v. Como, 53 F.3d 87, 89 (5th Cir. 1995) ("A separate and clear finding on each element of the alleged perjury, although preferable, is not required.").

In this case, the district judge ordered that obstruction of justice be added to the PSR, and then the court adopted the factual findings within the PSR. The PSR's factual findings became the findings of the district court. United States v. Cabral-Castillo, 35 F.3d 182, 186 (5th Cir. 1994). The PSR, as adopted by the district judge, concluded that Liu lied when she testified that she did not have Tseng sign a fraudulent invitation letter from a fictional Chinese company. These facts are a sufficient basis to satisfy the three elements of perjury.

First, the court made a factual conclusion that Liu made a false statement. Second, this court can easily conclude that the statement was material. This court has "upheld an implicit finding of materiality when it determined that the false testimony was obviously 'material' in that it was clearly designed to substantially affect the outcome of the case." Como, 53 F.3d at 90 (internal quotation marks omitted). Liu notes that the district court found that Liu gave false testimony only with respect to the letter from Tseng's employer. Because such a letter is not a required part of the I-539 application, Liu argues that her testimony with respect to that letter could not have been material to the prosecution. However, the crime at issue in this case involves knowingly presenting a visa application containing a false statement to the government. Therefore, Liu's false testimony about whether she knew the employer's letter was falsified is material to this case because that letter was in fact a part of the I-539 application, regardless of whether such a letter was a required part of the application.

Third, Liu claims that the district court's interpretation of her testimony as false turns on a disputed translation of the recorded conversation between Liu and Tseng. However, there was other evidence to suggest that Liu was aware

28

that Tseng was misrepresenting his foreign employment. For example, the forensic computer evidence shows that Liu created the employment letter on her own computer and printed it after Tseng returned to the office a second time on the afternoon of March 27, 2003. This evidence belies Liu's claim that she printed the letter earlier and gave it to Tseng to have signed by an authorized representative of his employer. Therefore, the district court's factual finding that Liu lied in her testimony encompassed all of the factual predicates for a finding of perjury, and the district court did not commit clear error in applying the obstruction of justice enhancement.

G.      Rule 33 motion for new trial

i.      Standard of Review

This court reviews the district court's denial of a Rule 33 motion for new trial for abuse of discretion. United States v. Dula, 989 F.2d 772, 778 (5th Cir. 1993).

ii.      Analysis

A district court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). On appellate review, however, this court is limited to the question of "whether or not the district court's ultimate decision in granting or denying the motion for a new trial constituted a clear abuse of its discretion." United States v. Tarango, 396 F.3d 666, 672 (5th Cir. 2005). "In our capacity as an appellate court, we must not revisit evidence, reevaluate witness credibility, or attempt to reconcile seemingly contradictory evidence." Id. (citing Dula, 989 F.2d at 778-79).

Here, Liu presents miscellaneous reasons that she should be granted a new trial in the interests of justice or, alternatively, to prevent a manifest miscarriage of justice. First, she argues that the alien witnesses who testified against her are not credible because they had all committed immigration fraud and were seeking to curry favor with the government. Liu speculates that, in exchange for their

testimony, those witnesses were granted immunity and allowed to work legally in the United States. However, it is clear that the jury—and the district judge—already made this credibility determination, and Tarango dictates that such determinations are not to be second guessed on appellate review. Tarango, 396 F.3d at 672.

Second, Liu repeats her contention that the Allen charge unduly coerced the twice deadlocked jury to a reach verdict. However, as we have already noted, the district court did not err in issuing its Allen charge. Because Liu has shown no abuse of discretion, we affirm the district court's denial of her Rule 33 motion.

## IV. CONCLUSION

For the foregoing reasons, we affirm Liu's conviction and sentence. AFFIRMED.